IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| PAMELA HOWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:20-cv-00213-RAH-SMD |
| | ) | |
| IVY CREEK OF TALLAPOOSA, LLC, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | | |
| PAMELA HOWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:21-cv-00375-RAH-SMD |
| | ) | |
| IVY CREEK HEALTHCARE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

After suffering a debilitating aneurysm on March 8, 2019, that required hospitalization, surgery and leave from work, on June 14, 2019, Plaintiff Pamela Howard was notified by letter from her employer, Defendant Ivy Creek of Tallapoosa, LLC d/b/a/ Lake Martin Community Hospital (Ivy Creek), that she had been terminated due to exhaustion of her medical leave. The letter also indicated that she would be provided a COBRA continuation notice for continuation of her dental and health coverages. Howard was timely provided the COBRA continuation

1

notice for her dental coverage at her residence address, but she was not provided the COBRA continuation notice for her health coverage at her residential address, as the notice was mailed to a former residential address.  Howard's follow-up requests to Ivy Creek for the health care package and later the ERISA plan documents were ignored.  This lawsuit followed.  In it, Howard seeks statutory penalties, equitable relief in the form of payment of her accrued medical bills and premiums, and attorney's fees.  Pending before the Court are numerous motions, including a Motion for Summary Judgment by Howard, a Motion for Judgment on the Pleadings by UMR, Inc., and a Motion for Summary Judgment by Ivy Creek.  For the following reasons, Howard's and Ivy Creek's summary judgment motions are due to be denied and UMR's granted.

## LEGAL STANDARD

Pending before the Court are motions for summary judgment filed by Howard and Ivy Creek, and a motion for a judgment on the pleadings filed by UMR.  The standards for reviewing the two types of motions are different.

Judgment on the pleadings under Fed. R. Civ. P. 12(c) is appropriate "when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Douglas Asphalt Co. v. Qore, Inc*., 541 F.3d 1269, 1273 (11th Cir. 2008).  "To decide a Rule 12(c) motion for judgment on the pleadings, courts apply the same standard applied to Rule 12(b)(6) motions to dismiss." *Johns v. Marsh &*

*McLennan Agency LLC*, Case No. 3:19-cv-687-ALB-SRW, 2020 WL 1540397, at *1 (M.D. Ala. Mar. 31, 2020).  "That is, the Court must accept all facts alleged in the complaint as true, viewing them in the light most favorable to the non-movant." *Id.* (citing *Qore*, 541 F.3d at 1273; *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)).  Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The legal elements of a claim determine which facts are material and which are irrelevant.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A fact is not material if a dispute over that fact would not affect the outcome of the case under the governing law.  *Id*.

A court must view the proffered evidence in the light most favorable to the nonmovant and resolve all reasonable doubts about the facts in the nonmovant's favor. *Johnson v. Bd. of Regents of Univ. of Ga*., 263 F.3d 1234, 1242–43 (11th Cir. 2001).  The nonmovant must produce sufficient evidence to enable a jury to rule in

his favor; a mere scintilla of evidence in support of a position is insufficient. *Id*. at 1243. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. (quoting *City of Delray Beach v. Agric. Ins. Co*., 85 F.3d 1527, 1530 (11th Cir. 1996)).

"Cross-motions . . . will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (per curiam) (citation omitted). When both parties move for summary judgment, each motion must be evaluated on its own merits, with all reasonable inferences resolved against the party whose motion is under consideration. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).

## BACKGROUND

Pamela Howard was hired by Ivy Creek as a nursing assistant in March 2015. At the time, she resided in Valley, Alabama.

Several months later in September 2015, Howard moved to Jackson's Gap, Alabama. (*Id*. at 26, 91.) Howard claims to have notified Ivy Creek of her address change on at least two occasions, including by leaving notes in human resource department head Stacy DeLoach's box and underneath billing specialist Lisa Key's

4

door.  (*Id*. at 28-32; Doc. 64-3 at 13; Doc. 64-4 at 10.)  Ivy Creek however claims that it has no record of an address change in Howard's personnel file.  (Doc. 64-2 at 16, 90–91.)

Despite the requested address change, Howard's former Valley address remained on a number of documents at Ivy Creek that were regularly given to Howard, including her W-2 tax documents.  (Doc. 64-5 at 24, 27, 92.)  According to Howard, she did not pay attention to the address on these documents and therefore did not catch the address discrepancy.  (*Id.* at 92.)

Ivy Creek maintained a self-insured health insurance coverage plan for which it served as both the Plan Sponsor and Plan Administrator.  UMR was the third-party administrator for the plan under an administrative service agreement with Ivy Creek, which included the responsibility of handling claims and issuing COBRA continuation notices.  (Doc. 64-2 at 46–49, 77–78.)

In connection with her employment at Ivy Creek, Howard elected to participate in Ivy Creek's health insurance plan.  Aside from receiving an insurance card at work, Howard claims she never received a copy of the plan nor was she aware that she could go online to review claims, benefits, or other personal information.  (*Id.* at 89–90.)

On March 7, 2019, Howard suffered a brain aneurysm and was hospitalized and later underwent surgery.  Howard never returned to work at Ivy Creek due to

her medical condition; however, she believed that she remained an employee of Ivy Creek until she received a letter dated June 14, 2019, informing her otherwise. (*Id.* at 49–50, 57.) Ivy Creek formally terminated her employment on July 10, 2019. (Doc. 64-2 at 67.)

On June 14, 2019, Key (who was filling in for DeLoach while DeLoach was out due to a pregnancy) mailed Howard a letter to her Jackson's Gap address that notified Howard that her medical leave benefits had expired as of June 6, 2019, that her health insurance had lapsed due to nonpayment of premiums, and that she would be receiving COBRA continuation information separately. (Doc. 64-3 at 21–22; Doc. 64-5 at 46, 123.) According to Key, she was unable to access Howard's payroll records from the computer system for mailing information, but she was able to access certain medical records which identified Howard as having a Jackson's Gap mailing address. (Doc. 64-2 at 72–73; Doc. 64-3 at 33–36.)

On that same date, Key also mailed Howard another letter to her Jackson's Gap address that notified her of her COBRA continuation rights associated with her dental coverage. (Doc. 64-4 at 47; Doc. 64-5 at 67.) Since UMR handled COBRA continuation notices for the health insurance plan as part of its obligations as the third-party administrator, Key did not send Howard a COBRA continuation notice associated with Howard's health insurance. (Doc. 64-3 at 44, 52.)

On June 26, 2019, DeLoach accessed the UMR portal and instructed UMR to send Howard the COBRA continuation notice for her health insurance as previously referenced in the June 14, 2019 letter.  (Doc. 64-4 at 27–34.)   UMR mailed the COBRA notice on June 29, 2019, but unlike the June 14, 2019 letter previously sent by Key, the COBRA notice was mailed to Howard's former address in Valley, Alabama.  (Doc. 64-5 at 141–48.)

According to UMR, the notice was sent to that address because Ivy Creek never notified it of an address change.  (*Id.* at 256.)  According to Ivy Creek, the Valley, Alabama address remained in the UMR portal because that address had ported over from the previous third-party administrator and because Howard never notified Ivy Creek of an address change.  (Doc. 64-2 at 39–40, 90–91; Doc. 64-7 at 32.)  UMR and Ivy Creek acknowledge that Ivy Creek had the ability to review the UMR portal and provide updated address information for Howard, just as it could for any plan participant or employee.  (Doc. 64-3 at 27; Doc. 64-7 at 26–28.)

Howard did not receive the June 29, 2019 COBRA continuation notice for her health insurance.  (Doc. 64-5 at 74.)  Instead, the notice was later returned to UMR by the postal service as, "no longer at this address."  (Doc. 64-5 at 140–48, 256.) UMR did not notify Ivy Creek of the returned COBRA notice.  (Doc. 64-7 at 56–57, 59.)

7

Several months later, in October 2019, Ivy Creek received a letter from Howard stating she had not received her COBRA health insurance notice and asking what she needed to do to have her health insurance coverage reinstated.  (Doc. 64-4 at 77–78; Doc. 64-5 at 68, 239.)  Ivy Creek did not respond to Howard; instead, Ivy Creek contacted UMR and discovered that the COBRA notice had been returned to UMR as undelivered.  (Doc. 64-4 at 78; Doc. 64-5 at 70, 256–58.)

On January 6, 2020, through counsel, Howard issued Ivy Creek a letter requesting plan documents regarding Howard's COBRA benefits.  (Doc. 64-1 at 1, 5–7.)  Ivy Creek did not provide the requested plan documents until February 4, 2021, after litigation had been filed.  (Doc. 64-1 at 3, 33.)

## ANALYSIS

In her Second Amended Complaint, Howard brings claims against Ivy Creek and UMR under 29 U.S.C. §§ 1132(a)(1)(B), (a)(3), (c), and 1161 *et seq.* relating to the statutorily required COBRA continuation notice that was not provided to Howard at her residence address in Jackson's Gap, Alabama.  She also brings a claim arising from Ivy Creek's failure to provide her with the plan documents as she had requested on January 6, 2020.  She seeks statutory penalties and equitable relief including payment of her health insurance premiums and her outstanding medical bills, interest, and attorney's fees.

### Count One – COBRA Notice (Ivy Creek)

The Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), amended the Employee Retirement Income Security Act of 1974 (ERISA) to require plan sponsors of group health plans to provide continuing coverage to qualified beneficiaries after certain qualifying events.   Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. No. 99-272, 100 Stat 82 (1986) (codified as amended at 29 U.S.C. § 1161 *et seq.*); 29 U.S.C. § 1161(a). The statute requires that an employer notify its health plan administrator within thirty days of the occurrence of a qualifying event.   29 U.S.C. § 1166(a)(2).   And it further requires that the administrator notify the qualified beneficiary about the option to continue coverage within fourteen days of itself being notified.  *See id.* at § 1166(c).  Under 29 U.S.C. § 1132(c)(1), a court may penalize a plan sponsor or plan administrator for failure to provide the proper notice of continuing coverage to a beneficiary, including penalties up to $110 per day from the date of the failure to give notice.

Importantly, a plan sponsor or administrator need not ensure that a beneficiary actually receives the required notice.  Rather, it need only make a good faith effort to notify a covered beneficiary/employee of the employee's COBRA rights, such as through in-hand delivery, first class mail to the beneficiary's last known address, and electronic delivery under certain conditions.  *See* 29 C.F.R. § 2520.104b-1(b)(1), (c)(1); *DeBene v. BayCare Health Sys., Inc.*, 688 F. App'x 831, 839 (11th Cir. 2017); *Griffin v. Neptune Tech. Grp.,* Civil Action No. 2:14cv16–

MHT, 2015 WL 1635939, at *10 (M.D. Ala. Apr. 13, 2015).

In Count One, Howard claims that Ivy Creek and UMR have violated COBRA by failing to mail her COBRA continuation notice to her last known address; that is, her Jackson's Gap address. The parties agree that the COBRA notice was never mailed to that address, but instead, that it was mailed to Howard's former address in Valley, Alabama.

It is undisputed that Howard lived in Jackson's Gap in June 2019 and that Ivy Creek never notified UMR of an address change for Howard from Valley to Jackson's Gap. It is also undisputed that Ivy Creek mailed the June 14, 2019 employment termination letter and initial notice about COBRA, as well as her COBRA continuation notice regarding her dental coverage, to Howard's Jackson's Gap address.

The disputed issue here is whether the Valley address was Howard's last known address to Ivy Creek. The record contains evidence, although contested by Ivy Creek, that Howard previously notified Ivy Creek of her address change on at least two occasions, but that Ivy Creek never updated the UMR portal with any change of address in response to these notifications. The record also contains evidence that Ivy Creek possessed medical records that contained Howard's Jackson's Gap address. And to add another element, there is evidence showing that Howard continued to receive certain documents at Ivy Creek with her former Valley

mailing address, yet she largely ignored the address discrepancy.

The record certainly, at a minimum, reflects a question of fact on the last known address issue.  After all, aside from Howard's testimony that she provided notice of her address change on two occasions, Ivy Creek was aware of her Jackson's Gap address because it possessed medical records with that address and it sent correspondence to that address, including Howard's COBRA continuation notice for her dental insurance.  On the other hand, Ivy Creek says it has no record of a change of address request and that Howard received documents that put her on notice that Ivy Creek's records showed her with an address in Valley, Alabama.

Ivy Creek argues that it complied with its statutory duty because it "provided UMR with instructions to provide notice to Ms. Howard at her last known address." (Doc. 58 at 10.)  In other words, Ivy Creek appears to disclaim liability by the mere fact that it contracted with UMR to provide COBRA continuation notices.  While it is true that Ivy Creek delegated to UMR the obligation to mail Howard her COBRA continuation notice, that delegation of a ministerial task does not absolve Ivy Creek of liability when Ivy Creek fails to provide proper last known address information. *See, e.g., Scott v. Suncoast Beverage Sales, Ltd*., 295 F.3d 1223, 1230–31 (11th Cir. 2002) (rejecting argument that employer had acted in good faith simply because it had contracted away the obligation to send the COBRA continuation notice); *Boddicker v. Esurance Ins. Services, Inc.*, Civ. No. 09–4027–KES, 2011 WL

6372863, at *9 (D.S.D. Dec. 20, 2011) ("While Esurance may have a third party send out COBRA notices, Esurance retains liability under COBRA as the plan administrator."). And from UMR's perspective, it did what it was instructed to do; that is, mail the COBRA notice to Howard to the address contained in its system for Howard.

Simply put, nothing in the record shows that Ivy Creek is entitled to summary judgment on Howard's COBRA notice claim. It will be for the factfinder to determine whether the Valley address was Howard's last known address to Ivy Creek and whether Ivy Creek made a good faith attempt to notify Howard of her COBRA rights. *See, e.g.,*; *Reed v. Nike, Inc*., 17 Civ. 7575 (LGS), 2019 WL 2327519, at *6–7 (S.D.N.Y. May 31, 2019) (denying summary judgment on COBRA notice claim because a question of fact existed as to the proper address); *Boddicker*, 2011 WL 6372863, at *9–12 (judgment following trial on the issue of the proper address to send a COBRA notice); *Beard v. Music City Inn, Inc*., 875 S.W.2d 276, 277–78 (Tenn. 1993) (reversing summary judgment in favor of employer on COBRA notice claim that was sent to wrong address when employer had employee's correct address in its records). Accordingly, there being questions of fact, Howard's and Ivy Creek's summary judgment motions on Count One are due to be denied.

**Count Two – Failure to Provide Plan Documents (Ivy Creek)**

In Count Two, Howard brings a claim against Ivy Creek under 29 U.S.C. § 1024(b)(4) due to Ivy Creek's failure to respond or otherwise provide plan documents as requested by Howard in a letter dated January 6, 2020.  Ivy Creek moves for summary judgment, arguing that it failed to comply with the letter because UMR has said that Howard was no longer COBRA-eligible.

Section 104(b)(4) of ERISA requires plan administrators to disclose certain plan documents upon "the written request of any participant or beneficiary."  29 U.S.C. § 1024(b)(4).  This is to ensure "that 'the individual participant knows exactly where he stands with respect to the plan.'"  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989) (quoting H.R. Rep. No. 93-533, at 11 (1973), *reprinted in* 1978 U.S.C.C.A.N. 4639, 4649).  A plan administrator who fails to make a required disclosure to a participant or beneficiary within 30 days after a request for information may be held personally liable for up to $110 a day from the date of failure.  29 U.S.C. § 1132(c)(1).

As defined by ERISA,

[t]he term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive such benefit.

ERISA § 3(7); 29 U.S.C. § 1002(7).

The Supreme Court has construed "participant" to include former employees with "'a colorable claim' to vested benefits," since such individuals "may become eligible" for benefits within the meaning of the statute. *Firestone Tire & Rubber Co.*, 489 U.S. at 117 (citation omitted).  In order to establish that he or she "may become eligible" for benefits, a former employee must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future.  *Id.* at 117–18  A colorable claim does not mean an ultimately successful action on the merits.  *Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, 1364 (2d Cir. 1991) (affirming district court's holding that allegations stated a colorable claim for benefits "regardless of the outcome of the instant action").

Here, Howard is a former employee – a participant – who claims she was entitled to a COBRA continuation notice because of a qualifying event.  She has a colorable claim for benefits.  *See, e.g., Bethel v. Institute for Tech. Dev., Inc.*, CAUSE NO. 1:08cv1348-LG-RHW, 2009 WL 10722572, at *2 (S.D. Miss. Oct. 7, 2009) ("Where a former employee alleges that he would have received medical and subsequent COBRA benefits but for his employer's failure to notify him, he has a colorable claim for vested benefits." (citation omitted)).  From all that appears, Howard's success on Count Two is somewhat tied to her success on Count One.  Even Ivy Creek acknowledges this, as it notes, "if Count One fails then Count Two

14

fails." (Doc. 58 at 13.)  As such, Ivy Creek has not shown its entitlement to summary judgment on Count Two.  And it certainly is not entitled to summary judgment simply because UMR told Ivy Creek that Howard was no longer a participant, a statement that may be premised in error if Howard's COBRA notification rights were in fact violated.

### Count One (UMR)

UMR has filed a motion of its own, coming by way of a motion for judgment on the pleadings.  In a similar vein, Howard has also moved for summary judgment as to Count One, the sole claim asserted against UMR.

As the Court understands it, Count One is primarily centered upon the failure to provide Howard with the COBRA continuation notice, a claim largely directed at the actions of Ivy Creek who bore the obligation under the administrative service agreement to notify UMR of any address changes by Howard.  As to UMR, there is no dispute that it issued the proper notice; it simply did not issue it to Howard's actual address in Jackson's Gap, Alabama.  And that is because UMR was not notified of Howard's change of address.  Liability for that notice not going to the proper, or last known address, of Howard is analyzed against Ivy Creek, as Ivy Creek is the employer, plan sponsor and plan administrator.  And, under the agreement between Ivy Creek and UMR, Ivy Creek bore the responsibility of notifying UMR of any address changes.   Howard all but admits that UMR does not have a dog in

that fight, and therefore cannot be held liable for statutory penalties associated with a failing in issuing that notice to the correct address.

But Howard takes two alternative tracts against UMR under Count One in an effort to keep UMR in the case.  First, Howard broadly argues that UMR owes "fiduciary duties" and that UMR's failure to notify Ivy Creek, due to their contractual status, of the returned-mail of the COBRA notice constitutes a breach of fiduciary duty owing to Howard.  Howard cites no persuasive case law or statutory citation for this proposition, and the substance of the assertion does not sound in a fiduciary duty which typically is founded in discretionary authority and responsibility.  *See* 29 U.S.C. § 1002 (21)(A)(i) ("[A] person is a fiduciary with respect to a plan to the extent he exercises any discretionary authority or discretionary control respecting management of such plan."); *see, e.g., Mary Kay Holding Corp. v. Federal Ins. Co*., 309 F. App'x 843, 849 (5th Cir. 2009); *Swint v. Protective Life Ins. Co*., 779 F.Supp. 532, 555–59 (S.D. Ala. 1991).

Instead, Howard cites to language in the contract between UMR and Ivy Creek that requires UMR to provide periodic reports to Ivy Creek and that UMR failed to do so.  The Court fails to see, and Howard certainly has not provided legal support, how this creates a fiduciary duty to Howard.  It may constitute a breach as between Ivy Creek and UMR that accrues to Ivy Creek but not a breach of a fiduciary duty

owing to Howard.  The Court is not persuaded by Howard's attempt to plead around the general limitation of COBRA liability to plan sponsors and administrators.

Howard's other tract is to argue that UMR is a "necessary party" to any equitable relief ordered by the Court.  According to Howard, if the Court concludes that Howard's COBRA notice rights were violated and that, as an equitable remedy, Howard's medical bills should be processed and paid, UMR must be a party in order to process that payment.  However, the Court fails to see why UMR necessarily must remain in the case if the Court was to conclude that Ivy Creek violated its statutory obligations.  This is so because the Court can award both statutory penalties and equitable relief against Ivy Creek.  That equitable relief can include an order that Ivy Creek pay the medical bills, or reimburse those bills that Howard has paid, which in either case would be costs borne by Ivy Creek and the self-insured plan, not UMR. And, the Court can order Ivy Creek to instruct UMR to process those bills if necessary, as is Ivy Creek's power under its agreement with UMR.  As such, the Court does not see why UMR's presence in this case is necessary for Howard to be afforded the equitable relief she seeks.  From all that appears, Howard appears to base her concern on hypothetical, unripe what-ifs.

Simply put, Howard has failed to show her entitlement to summary judgment against UMR.  UMR, however, has shown its entitlement to a judgment on the pleadings.

## CONCLUSION

It is therefore ORDERED as follows:

(1) Plaintiff Pamela Howard's Motion for Summary Judgment (Doc. 63) is DENIED.

(2) Defendant Ivy Creek of Tallapoosa LLC's Motion for Summary Judgment (Doc. 57) is DENIED.

(3) Defendant UMR, Inc.'s Motion for Judgment on the Pleadings (Doc. 36) is GRANTED.

(4) A separate order setting this case for trial will be issued.

DONE, on this the 22nd day of September, 2022.

_____/s/ R. Austin Huffaker, Jr._____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE